IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────────────────────

JESSE SANDLIN,

     Plaintiff,

vs.                                          No. 15-2768-JTF-dkv

CITIBANK, N.A.,
CITIMORTGAGE, INC.,

     Defendants.

───────────────────────────────────────────────────────

REPORT AND RECOMMENDATION ON THE DEFENDANTS' MOTION TO PARTIALLY
DISMISS SANDLIN'S AMENDED COMPLAINT

───────────────────────────────────────────────────────

On November 10, 2015, the plaintiff, Jesse Sandlin ("Sandlin"), filed a *pro se* complaint against the defendants, Citibank, N.A. ("Citibank") and CitiMortgage, Inc. ("CitiMortgage")(collectively "the Defendants"), in the Circuit Court of Shelby County, Tennessee, setting forth claims for breach of contract, slander of title, violation of the Tennessee Consumer Protection Act, declaratory relief, fraudulent misrepresentation, and intentional infliction of emotional distress. (Compl. 1-21, ECF No. 1-2.) On November 25, 2015, the Defendants removed the action to the United States District Court for the Western District of Tennessee based on diversity jurisdiction. (ECF No. 1.) The case has been referred to the United States Magistrate Judge for management and for all

pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

On April 21, 2016 the Defendants filed a motion to dismiss all of Sandlin's claims except for the breach of contract claim. (ECF Nos. 22, 23.) The magistrate judge recommended that the Defendants' motion to dismiss be granted in part and denied in part. (ECF No. 24.) The district court judge adopted the report and recommendation and dismissed Sandlin's claims of slander of title, violation of TCPA, and intentional infliction of emotional distress. (ECF No. 25.) Sandlin filed an amended complaint on December 21, 2016, in which he added additional factual allegations, and set forth the following additional claims: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Fair Credit Reporting Act ("FCRA"); (3) breach of settlement agreement; and (4) defamation. (ECF No. 36.)

Before the court is the Defendants' January 26, 2017 motion to dismiss the FCRA, FDCPA, and defamation claims from Sandlin's amended complaint. (ECF No. 41.) Sandlin filed a timely response in opposition, (ECF No. 42), and the Defendants filed a reply, (ECF No. 44). For the reasons that follow, the court recommends that the Defendants' motion be partially granted and that Sandlin's claim for violations of the FDCPA and his

defamation claim based on the Defendants' furnishing of information to the credit reporting agencies be dismissed.

I. PROPOSED FINDINGS OF FACT

In his amended complaint, Sandlin alleges that in December 2000, he executed a Promissory Note payable to First Trust Bank, along with a Deed of Trust, secured by the property located at 4743 Kassel Cove, Memphis, Tennessee 38116 ("the Property"), and guaranteed by the Department of Veterans Affairs. (Am. Compl. ¶¶ 8-9, ECF No. 36.) On May 1, 2006, CitiMortgage assumed all mortgage servicing rights. (*Id.* ¶ 10.)

In the amended complaint, Sandlin states that he has "tendered all amounts due on the mortgage every month and designated[] as to how the payments are to be applied . . . [but that the Defendants] manipulated [his] mortgage payments and [held him] in default as a means of acceleration [of] the []Note and Deed of Trust[]." (*Id.* ¶ 8.) On July 2, 2015, Sandlin received a letter from "Citi"[1] stating that it was an attempt to collect a debt and indicating that there was a past due amount on the mortgage account for $4,101.26. (*Id.* ¶ 11.) In the following days, Sandlin communicated with several customer service representatives disputing the past due amount and was generally informed that he was behind on mortgage payments and

---

[1] Sandlin does not state whether "Citi" refers to Citibank or CitiMortgage. Based on the context, however, the court assumes that "Citi" refers to the defendants collectively.

that his recent payments had been applied to the oldest outstanding installments. (*Id.* ¶¶ 12-20.)

On August 20, 2015, Sandlin was informed by a "Citi customer service representative" that no payments were received for April 2015 through August 2015 and that "the account started going bad on September[] 2013[] through November[] 2013." (*Id.* ¶ 21.)  Sandlin alleges that on August 28, 2015, he sent a validation request asking "Citi" to provide him with a number of documents regarding his loan.  (*Id.* ¶ 22.)  On September 3, 2015, "Citi" responded that they stand by the decision that Sandlin's mortgage was in default and did not adequately respond to the request for verification of the debt.  (*Id.* ¶ 23.) Sandlin alleges that thereafter he sent a second request for validation.  (*Id.*)

On October 1, 2015, he received a letter from Shapiro & Ingles, LLP, notifying him that it had elected to accelerate the debt and that a foreclosure sale was scheduled for October 20, 2015.  (*Id.* ¶¶ 24, 28.)  In the letter, Shapiro & Ingles also notified Sandlin of his rights to request proof of the debt. (*Id.*)  Sandlin sent a third debt validation request on October 20, 2015.  (*Id.* ¶ 25.)  On October 21, 2015, he was informed by a customer service representative that foreclosure proceedings had started as of September 28, 2015 and that a sale was scheduled for November 16, 2015.  (*Id.* ¶ 26.)  The customer

service representative also allegedly told Sandlin that his mortgage was in default in November 2014 and gave Sandlin a payment history according to which no mortgage payments were received for April 2015 through October 2015. (*Id.*) Thereafter, three foreclosure notices were published each of which included a foreclosure date of December 14, 2015. (*Id.* ¶ 29.) On December 1, 2015, less than one month after Sandlin filed the instant complaint, the Defendants notified him that the December 14, 2015 foreclosure sale had been cancelled. (*Id.* ¶ 30.)

Sandlin alleges that "Citi" misapplied his mortgage payments and failed to disclose certain late fees, property inspection fees, and foreclosure fees. (*Id.* ¶¶ 31-38.) The misapplication of the mortgage payments also triggered various fees, including 27 substantial property inspection fees, (*id.* ¶¶ 39-42), and eventually resulted in default, (*id.* ¶ 39).

Sandlin alleges that Citi reported to credit reporting agencies that Sandlin was in default. (*Id.* ¶ 30.) After being denied credit, he filed disputes with several credit reporting agencies which notified "Citi" that Sandlin disputed the accuracy of the information it was furnishing to the credit reporting agencies. (*Id.* ¶¶ 60-63.) Nevertheless, Sandlin alleges, "Citi" continued to report false credit information. (*Id.* ¶¶ 77-78.)

In his amended complaint, Sandlin also includes facts pertaining to a 2009 settlement agreement between him and the Defendants. Sandlin alleges that in May 2009, "Citi" initiated foreclosure proceedings on the Property for missed mortgage payments. (*Id.* ¶ 65.) On May 12, 2009, Sandlin filed a lawsuit in this court disputing the default status of his mortgage loan due to misapplication of his mortgage payments. *Sandlin v. CitiMortgage, Inc.,* Case No. 2:09-cv-02294.

On May 14, 2009, Sandlin filed for bankruptcy and on August 26, 2009, "Citi" filed a proof of claim. (Am. Compl. ¶¶ 67-68, ECF No. 36.) The parties engaged in mediation, and, on August 1, 2012, reached a settlement agreement followed by an Agreed Order Resolving Pending Contested Matters and Approving Loan Modification. (*Id.* ¶¶ 69-70.) Sandlin alleges that on June 25, 2015, the Bankruptcy Court issued an Order Approving Chapter 13 Trustee's Final Report and Account and closed Sandlin's case after he had completed all payments under the confirmed plan. (*Id.* ¶ 72.) According to Sandlin, after the settlement, the Defendants "wrongfully attempted to collect the former mortgage debt that had been discharged, paid and/or released," thus violating the settlement agreement. (*Id.* ¶¶ 74, 80.)

Based on these allegations, in his amended complaint Sandlin asserts causes of action for: (1) breach of contract/mortgage agreement, (*id.* ¶¶ 81-95); (2) breach of

6

contract/court approved settlement agreement, (*id.* ¶¶ 96-97); (3) fraudulent misrepresentation, (*Id.* ¶¶ 98-106); (4) defamation, (*id.* ¶¶ 107-11); (5) declaratory relief, (*id.* ¶¶ 112-15); (6) violation of the FDCPA, (*id.* ¶¶ 116-23); and (7) violation of the FCRA, (*id.* ¶¶ 124-33). In the instant partial motion to dismiss, the Defendants seek dismissal of Sandlin's defamation, FDCPA, and FCRA claims.

## II. PROPOSED CONCLUSIONS OF LAW

A.  <u>Failure to State a Claim for Which Relief May Be Granted</u>

Courts sitting in diversity "apply state substantive law and federal procedural law." *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014)(citing *Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010)). The court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), in assessing *all* civil cases in federal court, including state or federal claims that were removed to federal court from state court. *Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 966 (E.D. Tenn. 2010).

To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d

625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff]

has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    Violation of FDCPA Claim

    Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To be held liable under the FDCPA, a defendant must be a "debt collector" within its meaning. The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (4), (6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, the term "debt collector" "refers only to persons attempting to collect debts due 'another.'" *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734 (6th Cir. 2007).

A creditor, on the other hand, is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). A debt collector does not include the consumer's creditors. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)(citations omitted). "[O]ne cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Fed. Bank,* 681 F.3d 355, 359 (6th Cir. 2012); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)("[A] creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.").

Here, Sandlin does not allege that the Defendants use any instrumentality of interstate commerce or the mail in operating a business whose principal purpose is to collect debts, or that the Defendants regularly collect debts owed or due to another. Furthermore, there is no allegation that Sandlin's debt was originally assigned to the Defendants after default. In fact, Sandlin's allegations suggest the contrary. According to the allegations in the amended complaint, Sandlin's debt was assigned to the CitiMortgage on May 1, 2006, (Am. Compl. ¶¶ 9-10, ECF No. 36), but Sandlin was not in default until November 2014, (*id.* ¶ 26). These allegations indicate that the debt was not in default at the time it was obtained by the Defendants, which exempts them from the definition of "debt collectors" and makes them creditors attempting to collect their own accounts.

Three of the cases cited by Sandlin discuss various violations of the FDCPA but are irrelevant to the issue of whether the Defendants in this case are debt collectors. *See generally Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003); *Whittaker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009); *Delawder v. Platinum Fin Servs.*, 443 F. Supp. 2d 942 (S.D. Ohio 2005).

Sandlin's reliance on *Bridge v. Ocwen Fed. Bank,* 681 F.3d 355 (6th Cir. 2012), is also misplaced. The *Bridge* court held that the definition of debt collector "includes any non-

11

originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Id.* at 362.    In *Bridge*, the defendants Deutsche Bank and Ocwen Federal Bank argued that they were not subject to the FDCPA because they were not debt collectors, but were the creditor and loan servicer respectively.    *Id.* at 357.    However, there was no recorded assignment establishing Deutsche as a creditor and Ocwen as a loan servicer and the defendants made "persistent efforts" to collect the debt.    *Id.* at 363.    Further, the debt "was already in default at the time [the defendants] obtained it."    *Id.* at 360.

Here, unlike the plaintiff in *Bridge*, Sandlin alleges that there was a mortgage assignment from Waterfield Mortgage Company to CitiMortgage on May 1, 2006.    (Am. Compl. ¶ 10, ECF No. 36.) Further, as stated above, there are no allegations that the loan was in default when the Defendants obtained it or that the Defendants treated the loan as in default from the time of acquisition. *See McKay v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-00512, 2014 WL 5529672, at *6 (S.D. Ohio Nov. 3, 2014)(holding that, unlike *Bridge*, the plaintiff had not alleged that the defendant "received the debt for the purpose of collecting for another or that the loan was in default at the time of acquisition"); *Cotter v. GMAC Mortg., LLC*, No. 12-15382, 2013 WL 3979371, at *3-4 (E.D. Mich. Aug. 2, 2013)(dismissing

the complaint because, unlike the plaintiff in *Bridge*, the plaintiff in *Cotter* did not allege that his "debt was originally assigned for servicing after default or that [the defendant] treated the loan as in default from the acquisition of its servicing interest").

Thus, because Sandlin has not plausibly alleged that the Defendants are "debt collectors" subject to the FDCPA, the court recommends that the FDCPA claim be dismissed.

C.  Violation of FCRA Claim

"The FCRA, 15 U.S.C. § 1681 *et seq.*, . . . is designed to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant and up-to-date information in a confidential and responsible manner.'" *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843-44 (6th Cir. 2004)(quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "The FCRA imposes distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Id.* at 844 (citing *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999)). Sandlin purports to hold the Defendants liable as furnishers of information to consumer reporting agencies.

The Defendants' statutory duties as furnishers of information to credit reporting agencies are set forth in 15 U.S.C. § 1681s-2. First, furnishers have a duty to provide accurate credit information to a consumer reporting agency. 15 U.S.C. § 1681s-2(a). There is no private right of action for consumers to enforce § 1681s-2(a). *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012).

Second, if a consumer reporting agency asks the furnisher to respond to a dispute about the information provided, the furnisher must conduct an investigation with respect to the disputed information and report the results to the consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A)-(C). If the investigation reveals that the information is incomplete or inaccurate, the furnisher must modify or delete the information and report those results to all other consumer reporting agencies to which it furnished the information. *Id.* § 1681s-2(b)(1)(D), (E). While the FCRA creates a private right of action to enforce § 1681s-2(b), "consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a [consumer reporting agency]." *Boggio*, 696 F.3d at 615-16.

Here, Sandlin alleges that he "filed a dispute with several credit reporting agencies," that Citi "was notified by the credit agencies that Plaintiff disputed the accuracy of the

14

information it was providing," and that Citi failed to conduct a
proper investigation of the dispute.  (Am. Compl. ¶ 60, ECF No.
36.)  Sandlin further alleges that Citi continued "to furnish
information [they] knew or should have known was incomplete or
inaccurate to reporting agencies." (*Id.* ¶ 61.)  Construing the
complaint liberally and taking these factual allegations as
true, they plausibly suggest an entitlement to relief.  Sandlin
has provided "fair notice" to the Defendants as to the "nature
of the claim[] [and the] grounds on which the claim rests."
*Twombly*, 550 U.S. at 555 n.3.  The Defendants here neither admit
nor deny that they received a notice from a consumer reporting
agency and the court cannot say for sure.  Thus, the FCRA claim
should not be dismissed at this time.  The Defendants can raise
the issue later by way of summary judgment if the facts become
clear.  *See Busch v. Wells Fargo Home Mortg. Inc.*, No. 5:16-CV-
210-JMH, 2017 WL 82473, at *4-5 (E.D. Ky. Jan. 9, 2017)(holding
that the plaintiffs allegations that they reported the
defendant's error to the credit reporting agencies but that the
defendant "continued to provide inaccurate information" were
sufficient to survive the defendant's motion to dismiss);
*Stafford*, 262 F. Supp. 2d at 784 (declining to dismiss the FCRA
claim because the court could not say for sure whether the
defendant received notice from a consumer reporting agency).

D.    <u>Defamation Claims</u>

Lastly, the Defendants argue that Sandlin's state law defamation claim is preempted by the FCRA. Sandlin claims that the Defendants knowingly and recklessly published defamatory information in the foreclosure notice, (Am. Compl. ¶ 108, ECF No. 36), and knowingly, maliciously, and recklessly defamed him when reporting damaging information to the credit bureaus, (*id.* ¶¶ 109-11).

The FCRA contains two preemption provisions. The first provision, 15 U.S.C. § 1681h(e), was included in the original enactment of the FCRA and states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

This provision applies to other entities in addition to furnishers of information and exempts any claims that allege malice or willful intent. Because Sandlin alleges malice on the part of the Defendants, (Am. Compl. ¶ 110, ECF No. 36), his defamation claim is not preempted by § 1681h(e). *See also Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 889 (W.D. Tenn.

2007)("Plaintiff is required under § 1681h(e) to allege and demonstrate that Defendant maliciously or willfully communicated defamatory statements about Plaintiff in order to avoid preemption.").

The second preemption provision, 15 U.S.C. § 1681t(b)(1)(F), was added in 1996 and provides that "no requirement or prohibition may be imposed under the laws of any state . . . with respect to the subject matter regulated under § 1681s-2[2] of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." *See also Wolfe*, 485 F. Supp. 2d at 883 (discussing the 1996 amendment to the FCRA). This provision applies only to furnishers of information.

The relationship between these two preemption sections is currently unsettled and the Sixth Circuit has yet to rule on the issue. *See Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 548 (6th Cir. 2012)("We have not yet decided whether section 1681h(e)'s exception for claims alleging malice or willful intent has been overridden by section 1681t(b)(1)(F), which was enacted later."); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 946 (S.D. Ohio 2010). "The resulting tension

---

[2]As discussed *supra*, § 1681s-2 imposes duties on furnishers to provide accurate information to credit reporting agencies, *see* § 1681s-2(a), and to investigate and correct any inaccurate information provided to credit reporting agencies after receiving notice of dispute, *see* § 1681s-2(b).

between these two provisions, as well as the various district court attempts to harmonize them have, resulted in four distinct and conflicting interpretive approaches." *Wolfe*, 485 F. Supp. 2d at 883.   These four approaches are discussed in detail in *Wolfe*, 485 F. Supp. 2d at 883-88.   They were succinctly summarized by one district court as follows:

> In a nutshell, the "temporal approach" views § 1681t(b)(1)(F) as preempting only state claims related to conduct by the furnisher *after* it receives notice of a dispute; and § 1681h(e) as applying only to claims arising from the conduct of the furnisher *before* that notice.  Under the "statutory approach," § 1681t(b)(1)(F) bars all state law claims based on statutory schemes, only, while § 1681h(e) is viewed as applying to common law claims.  The "total approach" views the 1996 amendments as repealing § 1681h(e) and thus concludes that § 1681t(b)(1)(F) preempts *all* state causes of action relating to the furnishing of credit information.  Under the approach adopted by the magistrate judge in *Westbrooks*, *[a]ll* state law claims that do not allege willfulness are preempted by § 1681h(e), and any surviving claims alleging willfulness are preempted under § 1681t(b)(1)(F) if they involve a subject-matter regulated under § 1681s-2.

*Skidmore v. Access Grp., Inc.*, No. CV 14-13031, 2015 WL 6736533, at *5 (E.D. Mich. Nov. 4, 2015)(citations and internal quotation marks omitted).

The "total approach" is easily dismissed because it conflicts with rules of statutory construction.  If Congress wished to repeal section 1681h(e), it would have affirmatively stated so.  *See TRW, Inc. v. Andrews,* 534 U.S. 19, 31 (2001)("It is a cardinal principle of statutory construction that a statute

ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."); *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 190 (1978)("[I]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."); *Wolfe*, 485 F. Supp. 2d at 883-84 ("Therefore, because neither § 1681t(b)(1)(F) or the 1996 amendments to the FCRA expressly repeal § 1681h(e), the Court must assume that Congress intended both provisions to remain active.").

The temporal approach is also easily dismissed because it is circular and flawed. *See Wolfe*, 485 F. Supp. 2d at 884-85 (discussing why the temporal approach is flawed).

The statutory approach, which was the approach ultimately adopted in *Wolfe,* also presents problems. Nothing in the language on § 1681t(b)(1)(F) limits its scope to state statutory schemes as the plain language of the provision preempts "the laws of any state," thus suggesting that it applies to all state law claims whether statutory or common law. *See Elsady v. Rapid Glob. Bus. Sols., Inc.*, No. 09-11659, 2010 WL 742900, at *6 (E.D. Mich. Feb. 26, 2010).

The court finds that the *Westbrook* approach best reconciles the two preemption provisions. Under this approach, state law claims that do not allege malice or willfulness are preempted

under § 1681h(e) and any claims that allege malice or willfulness are preempted under § 1681t(b)(1)(F) if they pertain to furnishers of information and involve a subject-matter regulated under § 1681s-2. *Westbrooks v. Fifth Third Bank*, No. 3:05-0664, 2005 WL 3240614, at *6 (M.D. Tenn. Nov. 30, 2005); *see also Birdsall v. Peoples Bank of the S.*, No. 3:12-CV-480-TAV-CCS, 2014 WL 640704, at *4 (E.D. Tenn. Feb. 19, 2014)(finding that the better approach is the majority approach expressed in *Westbrooks*). The later enacted § 1681t(b)(1)(F) carves out "a small subject matter related to furnishers of information" while § 1681h(e) "still applies to all state law actions that do not involve furnishers of information." *Elsady*, 2010 WL 742900, at *6.

More recently, the Eastern District of Michigan reached the same conclusion in *Skidmore v. Access Grp., Inc.*, No. CV 14-13031, 2015 WL 6736533 (E.D. Mich. Nov. 4, 2015), adopting the approach taken by the Second and Seventh Circuits. The court finds persuasive the Seventh Circuit's analysis cited in *Skidmore*:

> Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a right to recover for willfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same

20

> legislation also added § 1681s-2. The extra federal
> remedy in § 1681s-2 was accompanied by extra
> preemption in § 1681t(b)(1)(F), in order to implement
> the new plan under which reporting to credit agencies
> would be supervised by state and federal
> administrative agencies rather than judges. Reading
> the earlier statute, § 1681h(e), to defeat the later
> enacted system in § 1681s-2 and § 1681t(b)(1)(F),
> would contradict fundamental norms of statutory
> interpretation.

*Id.* at *6 (citing *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011)).

Sandlin's claim for defamation based on the Defendants' failure to conduct an investigation and reporting of information to credit reporting agencies involves a subject matter regulated under the FCRA, namely § 1681-2 of the FCRA. As such, Sandlin's defamation claim based on the Defendants' conduct as a furnisher is preempted by the FCRA and should be dismissed. *See Skidmore*, 2015 WL 6736533, at *6 (dismissing the plaintiff's defamation claim as preempted by § 1681t(b)(1)(F) because it involved subject matter regulated under § 1681s-2); *Birdsall*, 2014 WL 640704, at *5 (dismissing a defamation claim based upon the defendant's alleged improper reporting of plaintiff's credit information because it is regulated under § 1681s-2); *Elsady*, 2010 WL 742900, at *7 (dismissing the plaintiff's defamation claims "as barred by § 1681t(b)(1)(F) because they relate to [the defendant's] actions as a furnisher of information to a consumer reporting agency); *Westbrook*, 2005 WL 3240614, at *6

(dismissing a defamation claim based on failure to report complete and accurate information to a consumer reporting agency).

Sandlin also alleges, however, that:

> In publishing the [] foreclosure notice, Defendants published false and defamatory information concerning Plaintiff. Specifically, Defendants published statements indicating the Plaintiff was in default of his mortgage and that Defendants were rightfully entitled to foreclose. Those statements were made with the knowledge that they were false or with reckless disregard of whether they were false.

(Am. Compl. ¶ 108, ECF No. 36.) This particular claim is not based on the Defendants' reporting of information to credit reporting agencies and thus does not involve a subject matter regulated under the FCRA. Therefore, it is not preempted by the FCRA. The Defendants do not argue dismissal with respect to this remaining defamation claim, and, although skeletal, Sandlin sufficiently alleges the elements of a defamation claim.[3] Therefore, the court recommends that Sandlin's claim

---

[3]To establish a claim for written defamation in Tennessee, a plaintiff who is a private individual must allege that:

> (1) a statement is defamatory; (2) that the defamatory statement was published to a third party; (3) that the publication of that defamatory statement injured the plaintiff's reputation; and (4) that the defamatory statement does not relate to a matter of public concern.

*Wolfe*, 485 F. Supp. 2d at 888 (citing *Memphis. Pub. Co. v. Nichols,* 569 S.W.2d 412, 420 (Tenn. 1978)).

for defamation based on the Defendants' publishing of the foreclosure notice remain.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the Defendants' motion to dismiss be granted in part and denied in part and that Sandlin's claims of violation of the FDCPA and defamation based on the Defendants' reporting of information to the consumer reporting agencies be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted this 16th day of March, 2017.


s/ Diane K. Vescovo_____
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.